UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| ROGER J. DAY, M.D.,<br><br>    Plaintiff,<br><br>v.<br><br>MAYO CLINIC, N.P., a Minnesota non-profit corporation, MAYO CLINIC ROCHESTER, N.P., a Minnesota non-profit corporation, JONATHAN J. OVIATT, JOSEPH M. COLAIANO, KIMBERLY K. OTTE, LORI KUHLMANN-LEIBFRIED, R.N., STEVEN I. ALTCHULER, M.D., Ph.D., DENIS A CORTESE, M.D., WYATT W. DECKER, M.D., and PETER A. SMARS, M.D.,<br><br>    Defendants. | Civil No. 08-1096 (DWF/AJB)<br><br><br>**REPORT AND RECOMMENDATION** |

This matter is before the undersigned United States Magistrate Judge on Plaintiff's application for leave to proceed in forma pauperis, ("IFP"), pursuant to 28 U.S.C. § 1915(a). (Docket No. 2.) The matter has been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, the Court will recommend that Plaintiff's IFP application be denied, and that this action be summarily dismissed for lack of federal subject matter jurisdiction.

**I. BACKGROUND**

Plaintiff alleges that in April 2006, he went to the Mayo Clinic in Rochester, Minnesota, to "attend a public speaking engagement." While he was there, he became frustrated and distressed, so he decided to visit an emergency department at a hospital affiliated with Mayo. He was interviewed there by a nurse – Defendant Lori Kuhlmann-

Liebfried.

Plaintiff reluctantly told Defendant Kuhlmann-Leibfried that one of the causes of his distress was a dispute involving another Mayo employee, Defendant Steven L. Altchuler. Plaintiff purportedly told Kuhlmann-Leibfried that he had no interest in causing any physical harm to Altchuler, but Kuhlmann-Leibfried apparently felt, for some reason, that she should tell someone about Plaintiff's comments regarding Altchuler.

Plaintiff alleges that after he was discharged from the emergency department, Kuhlmann-Leibfried contacted Altchuler and Defendant Dr. Peter Smars, who apparently is affiliated with Mayo. Plaintiff subsequently learned that Altchuler and Smars had told others about the comments he made during his emergency department interview with Kuhlmann-Leibfried. Sometime later, Altchuler and several other individuals associated with Mayo allegedly obtained a restraining order against Plaintiff. However, the restraining order allegedly was <u>not</u> directly related to the comments Plaintiff made during his interview with Kuhlmann-Leibfried.

Plaintiff is now attempting to sue Kuhlmann-Leibfried, Altchuler, Smars, the Mayo Clinic, and several other individuals who allegedly were involved in the dissemination of Plaintiff's comments during his interview with Kuhlmann-Leibfried. He claims that the dissemination of his "personal medical information adversely affects his professional reputation, and can be expected to result in long-term economic damage." (Complaint, [Docket No. 1] p. 10, ¶ 26.) He further claims that:

> "The dissemination of confidential information, and the subsequent, deliberate mischaracterization of events preceding, surrounding, and following the improper dissemination have caused the Plaintiff emotional and physical injury, including chest pain, nausea, loss of appetite, anxiety, anger, frustration, depression, insomnia/sleep disturbance, and fatigue.

> Consequently, the Defendant's actions have caused the Plaintiff to seek and obtain medical and psychological treatments."

(Id., ¶ 27.)

Plaintiff's complaint presents nine clearly identified "Claims for Relief," which are as follows: (1) "Invasion of Privacy," (2) "Breach of Confidentiality," (3) "Defamation," (4) "Defamation Per Se as Against the Mayo Defendants and Otte," (5) "Intentional Infliction of Emotional Distress," (6) "Negligent Infliction of Emotional Distress," (7) "Violation of Minn.Stat. § 144.355, subd. 3a(e) as Against Mayo Defendants," (8) "Respondeat Superior," and (9) "Injunction." Plaintiff is seeking a judgment against the named Defendants for $50,000.00 on each of the various claims for relief listed in his complaint, together with costs, attorney fees, and such other relief as the Court deems appropriate.

## II. DISCUSSION

Fed. R. Civ. P. 12(h)(3) provides that "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." (Emphasis added.) "Subject matter jurisdiction... is a threshold requirement which must be assured in every federal case." Turner v. Armontrout, 922 F.2d 492, 293 (8th Cir. 1991). "[W]here jurisdiction does not exist the court, whether trial or appellate, shall dismiss the action sua sponte." Williams v. Rogers, 449 F.2d 513, 518 (8th Cir. 1971), cert. denied, 405 U.S. 926 (1972), (citing Louisville and Nashville R.R. Co. v. Mottley, 211 U.S. 149, 152 (1908)).

In this case, there are no possible grounds for federal subject matter jurisdiction. Subject matter jurisdiction cannot exist under the "federal question" statute, 28 U.S.C. § 1331, because there are no allegations suggesting that Plaintiff's claims are based on the Constitution, laws or treaties of the United States. Instead, it is clear that Plaintiff is

attempting to sue Defendant based solely on various <u>state</u> statutes and common law tort theories.

The Court recognizes that Plaintiff's complaint includes several references to his civil rights under the federal Constitution, as well as an extraneous reference to "the federal Health Insurance Portability and Accountability Act of 1996 ('HIPAA')." However, all nine of the "Claims for Relief" listed in the complaint are state law claims. More importantly, no federal claim can be found in any of the factual allegations in the complaint.

The Court notes, in particular, that Plaintiff cannot bring a federal civil rights action against Defendants, for allegedly violating his federal constitutional rights, because there are no allegations suggesting that the named Defendants are governmental agents or employees. <u>See</u> <u>Young v. Harrison</u>, 284 F.3d 863, 866 (8th Cir. 2002) (federal civil rights law "affords redress against a person who, <u>under color of state law</u>, deprives another person of any federal constitutional or statutory right") (emphasis added). Indeed, it clearly appears from Plaintiff's complaint that the named Defendants are <u>not</u> state (or federal) actors for federal civil rights purposes. Therefore, even if Plaintiff had attempted to plead a cause of action under the federal civil rights laws, that claim would be facially deficient.

It is also readily apparent that subject matter jurisdiction cannot exist under the "diversity of citizenship" statute, 28 U.S.C. § 1332. Jurisdiction is conferred by that statute only when (i) the parties reside in different states, and (ii) "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." In this case, it is evident that Plaintiff and most (if not all) Defendants reside in Minnesota. Therefore, the complete diversity of citizenship required by § 1332(a) obviously does not exist here.

Thus, the Court concludes that federal subject matter jurisdiction does not exist in this case under either the federal question statute or the diversity of citizenship statute. The Court will therefore recommend that Plaintiff's IFP application be denied, (see 28 U.S.C. § 1915(e)(2)(b)), and that this action be summarily dismissed for lack of jurisdiction, pursuant to Fed. R. Civ. P. 12(h)(3).[1]

### III. RECOMMENDATION

Based upon the foregoing and all of the files, records and proceedings herein,

IT IS HEREBY RECOMMENDED that:

1. Plaintiff's application to proceed in forma pauperis, (Docket No. 2), be **DENIED**; and

2. This action be summarily **DISMISSED** for lack of jurisdiction.

Dated: April 30, 2008                              s/ Arthur J. Boylan
                                                   ARTHUR J. BOYLAN
                                                   United States Magistrate Judge

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.  This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals.  Written objections must be filed with the Court before May 14, 2008.

---

[1] The Court's recommendation does not necessarily mean that Plaintiff has no actionable claim for relief; it simply means that he will have to pursue his claims in state court, rather than federal court.  (However, it might behoove Plaintiff to consult with an attorney before attempting to prosecute his claims in state court.)